STATE of Missouri, Respondent,

v.

Robert BENNETT, Appellant.

No. WD 31717.

Missouri Court of Appeals,
Western District.

July 7, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 25, 1981.

Application to Transfer Denied
Oct. 13, 1981.

John E. Turner, Kansas City, for appellant.

John Ashcroft, Atty. Gen., and Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., WASSERSTROM, C. J., and SHANGLER, J.

KENNEDY, Presiding Judge.

Defendant Robert Bennett was convicted upon jury trial of second-degree robbery and the jury assessed as punishment 10 years' imprisonment. As a persistent offender the court under § 558.016, RSMo 1978, added 15 years and defendant was sentenced to a total of 25 years' imprisonment. He has appealed, alleging that the out-of-court and the in-court identification of the defendant by the victim, Esther McLane, ought to have been suppressed, and urging also that the statutory enhancement procedure of § 558.016, RSMo 1978, violates defendant's "due process rights and right to trial by jury".

We find against the defendant on both points and affirm the judgment.

The facts of the case are as follows: Esther McLane was at the Greyhound bus station at Twelfth and Holmes Street in

Kansas City, Missouri, at about 11:45 o'clock p. m. on September 11, 1979. As she was getting a drink of water at the water fountain, a black man standing nearby said, "Excuse me". He stepped toward her, grabbed her purse and forcibly took it away from her. He then ran down the steps and out of the bus station. Defendant was seen to drop the purse outside the bus station and he was apprehended by the police almost immediately.

Ms. McLane did not see the defendant until one week later, on September 18, 1979, when she saw the appellant at the preliminary hearing and identified him as the person who had taken her purse.

Defendant filed a motion to suppress identification testimony for the stated reason that her identification was based upon improperly suggestive identification procedures, and that to allow her to identify the defendant in court would violate defendant's due process rights under the Missouri and Federal Constitutions.

■ The supposed improper procedure which the police used to suggest to Ms. McLane that defendant was the culprit, thereby inducing her improperly to identify defendant as the thief, was the following: As Ms. McLane was at the police station and as the police were preparing a report on the incident, one of the police placed on the counter the defendant's driver's license with his picture on it. Apparently no one drew the driver's license to Ms. McLane's attention, or suggested that the person whose photograph appeared thereon was the thief. Ms. McLane said she "snooped" and looked at the photograph. "The police were busy", she said. "There were several police in the room by them. I was sort of on my own . . ."

Entirely aside from the driver's license picture, though, Ms. McLane had an independent basis for identification and the totality of the circumstances convinced the trial court, as it convinces us, that her view of the defendant's picture caused no substantial risk of misidentification. Ms. McLane had a good opportunity at the time of the crime over a period of two or three seconds closely to look at defendant's features. She herself would later testify that his face was "indelibly" fixed in her mind and that her identification of the defendant was based upon her observation of him at the time. While she was unable to tell the police immediately after the crime what kind of clothes the defendant wore, she did say that he was tall, in his late twenties or early thirties in age, and that he was wearing a hat "something like an engineer wears". The defendant was in the age range in which Ms. McLane had placed the thief, was six feet two inches tall and was wearing a denim cap. Ms. McLane saw the defendant at the preliminary hearing one week after the crime and positively identified him at that time.

We have examined all the cases cited by the appellant and find that none of them support his position. The criteria for the admission of identification testimony as against a challenge of impermissibly suggestive police procedure, laid down in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); by our own Supreme Court in *State v. Higgins*, 592 S.W.2d 151 (Mo. banc 1979); and *State v. Parker*, 458 S.W.2d 241 (Mo.1970); and by this court in *State v. Dayton*, 535 S.W.2d 479 (Mo.App.1976); and *State v. Holland*, 534 S.W.2d 590 (Mo.App.1976); are amply met in the case now before us.

■ The appellant challenges the constitutionality of the Persistent Offender Act, § 558.016, RSMo 1978, stating that said statute violates his right to due process and his right to a jury trial under the Missouri and Federal Constitutions. This point is denied.

■ Neither the Federal Constitution nor the Missouri Constitution gives to the defendant the right to trial by jury on the issue of punishment. *State v. Prigett*, 470 S.W.2d 459 (Mo.1971); *Shields v. State*, 491

S.W.2d 6 (Mo.App.1973); *Turnbough v. Wyrick*, 551 F.2d 202, 203 (8th Cir. 1977).

Defendant does not suggest how our Persistent Offender Act violated the due process rights of the defendant, nor does he cite any case supporting that proposition. No such due process violation is obvious to us.

The judgment is affirmed.

All concur.